UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION<br>125 Broad Street – 18th floor<br>New York, NY 10004,<br><br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>125 Broad Street – 18th floor<br>New York, NY 10004,<br><br>                *Plaintiffs*,<br><br>   v.<br><br>DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530,<br><br>                *Defendant*. | No. 1:22-cv-00940-RCL |

**AMENDED COMPLAINT FOR INJUNCTIVE RELIEF**
**(Freedom of Information Act)**

**INTRODUCTION**

      1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief. Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation (together, the "ACLU") seek the immediate processing and timely release of agency records from Defendant Department of Justice ("DOJ").

      2.     On February 11, 2022, President Biden issued an executive order formally seizing or "blocking" $7 billion of currency reserves belonging to the country of Afghanistan that were being held in the United States, and then transferred those funds to a single account at the New York Federal Reserve. Subsequently, the U.S. Treasury Department issued a "license" ordering the New York Federal Reserve to transfer half of those assets into a separate account in the name

1

of the Afghan Central Bank, and authorized transfers of that $3.5 billion "for the benefit of the Afghan people and for Afghanistan's future," including World Bank trust funds; other trust accounts; "a United Nations fund, programme, specialized agency"; or any other "entity or body." The remaining $3.5 billion will reside in a frozen account at the New York Federal Reserve—to potentially be available, subject to court proceedings, to satisfy default monetary judgments against the Taliban obtained in litigation brought by certain families of victims of the September 11 attacks.

3. The President's seizure reflects a novel and apparently unprecedented use of emergency powers. Yet, apart from issuing public statements and a legal filing that include citations to and discussions of the International Emergency Economic Powers Act ("IEEPA") and the National Emergencies Act ("NEA"), to date the administration has not provided a complete public explanation of its legal justification for its executive order and other measures. *See* Charlie Savage, *Spurning Demand by the Taliban, Biden Moves to Split $7 Billion in Frozen Afghan Funds*, N.Y. Times (Feb. 11 2022), https://www.nytimes.com/2022/02/11/us/politics/taliban-afghanistan-911-families-frozenfunds.html.

4. Meanwhile, the Biden Administration's decision regarding the treatment of the Afghan assets is a topic of widespread and exceptional media attention and public debate. However, that debate is not informed by the administration's complete legal analysis, and neither experts nor the public can fairly evaluate the executive order and series of steps taken by the administration with regard to the Afghan funds.

5. In order to help inform the public about the administration's as-yet unexplained legal theories, Plaintiffs submitted a FOIA request (the "Request") to the DOJ Office of Legal Counsel ("OLC") on February 17, 2022, seeking records pertaining to the Biden Administration's

decision. To date, Defendant has not released any responsive records—which means neither the ACLU nor other members of the public have been able to fairly evaluate whether the administration's actions were lawful or unlawful, or otherwise appropriate.

6. Public disclosure of the requested OLC records is necessary to inform the ongoing public debate and to allow the public to fully understand the Biden administration's legal views about its use of emergency powers.

7. Plaintiffs now ask the Court for an injunction requiring DOJ to process the Request immediately. Plaintiffs also seek an order enjoining Defendants from assessing fees for the processing of the Request.

## JURISDICTION AND VENUE

8. The Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B), (a)(6)(E)(iii). The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701–706.

9. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

10. Plaintiff American Civil Liberties Union is a nationwide, non-profit, nonpartisan 26 U.S.C. § 501(c)(4) organization, incorporated in the District of Columbia and with its principal place of business in New York City. The American Civil Liberties Union's mission is to maintain and advance civil rights and civil liberties and to ensure that the U.S. government acts in compliance with the Constitution and laws of the United States. The American Civil Liberties Union is also committed to principles of transparency and accountability in government, and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights. Obtaining information about governmental activity,

analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of the American Civil Liberties Union's work and one of its primary activities.

11.     Plaintiff American Civil Liberties Union Foundation is a separate 501(c)(3) organization that educates the public about civil liberties and employs lawyers who provide legal representation free of charge in cases involving civil liberties. It is incorporated in New York State and its principal place of business is in New York City.

12.     Defendant DOJ is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1). The OLC, from which the ACLU requested records, is a component of DOJ.

## FACTUAL BACKGROUND

<u>President Biden's February 11, 2002 Announcement Regarding Afghan Funds</u>

13.     On February 11, 2022, President Biden issued an executive order invoking emergency powers to freeze $7 billion in assets belonging to the Afghan central bank, Da Afghanistan Bank, and require the transfer of those assets to a consolidated account held at the Federal Reserve Bank of New York. Exec. Order on Protecting Certain Property of Da Afghanistan Bank for the Benefit of the People of Afghanistan (Feb. 11, 2022), https://www.whitehouse.gov/briefing-room/presidential-actions/2022/02/11/executive-order-on-protecting-certain-property-of-da-afghanistan-bank-for-the-benefit-of-the-people-of-afghanistan.

14.     According to an accompanying fact sheet and media accounts, the Biden administration will "will seek to facilitate access to $3.5 billion of those assets for the benefit of the Afghan people and for Afghanistan's future" through the creation of a trust fund, while the remaining $3.5 billion will stay in the United States and be subject to ongoing lawsuits brought by

families of victims of the September 11, 2001 attacks. White House, FACT SHEET: Executive Order to Preserve Certain Afghanistan Central Bank Assets for the People of Afghanistan (Feb. 11, 2022), https://www.whitehouse.gov/briefing-room/statements-releases/2022/02/11/fact-sheet-executive-order-to-preserve-certain-afghanistan-central-bank-assets-for-the-people-of-afghanistan.

15. Several families of victims of the September 11, 2001 attacks have obtained uncontested default judgements against the Taliban for substantial damage awards. For example, in *Havlish v. Bin Ladin*, No. 03 Civ. 9848 (S.D.N.Y. Oct. 3, 2012), the judge ordered a $6.8 billion default judgment against the Taliban. However, the plaintiffs have been unable to collect on these judgments because the Taliban does not have meaningful assets in the United States. Plaintiffs have sought writs of attachment regarding the Afghan assets the Biden Administration froze pending litigation, arguing that these funds are now owned and controlled by the Taliban. Some families of the victims of the September 11 attacks oppose the plaintiffs' efforts to recover damages from the frozen Afghan funds.

16. As explained, the executive order claims authority to freeze and transfer Afghan funds under the IEEPA and the NEA. The New York Times reported that the government plans to further rely on legal authority in the Federal Reserve Act.

17. On a February 11, 2021 press call, a senior White House official acknowledged that the situation was "unique" and "unprecedented," further stating "this has been quite a legally complicated road." The official did not offer any details on the administration's legal process, or the legal theories upon which it is acting, other than citing the IEEPA.

18. According to the New York Times, "a person familiar with the matter said that the Justice Department's Office of Legal Counsel reviewed the arrangement."

19. In a February 11, 2022 "Statement of Interest" filing in *Havlish* and related cases, the government provided brief legal explanations concerning the executive order's invocations of the IEEPA, the NEA, and other authorities—analysis that likely forms part of the requested OLC memoranda.

20. In the weeks since the administration's announcement regarding Afghan funds, its decision has garnered significant media attention and become the subject of vigorous public debate.

21. Critics of the policy have claimed that the freeze of Afghan funds will exacerbate the ongoing humanitarian and economic crisis in Afghanistan. Following the U.S. withdrawal from Afghanistan in August 2021, and the subsequent takeover of the Afghan government by the Taliban, most international humanitarian aid to Afghanistan was suspended. Poverty and food insecurity are widespread, and at least one million Afghan children are currently at risk of dying from starvation. Defenders of the administration's actions have argued that it will protect Afghan assets, both from the Taliban and from U.S. litigation.

22. No OLC opinion regarding the seizure has been released to the public.

## The FOIA Request

23. On February 17, 2022, the ACLU submitted a FOIA Request to the DOJ OLC, seeking "the release of all OLC records—including but not limited to legal opinions, memoranda, advisories, guidance documents, and emails—relating to the February 11, 2022 Executive Order and the decision to freeze, consolidate, and potentially distribute Afghan funds."

24. Plaintiffs sought expedited processing of the Request on the ground that there is a "compelling need" for these records because the information requested is urgently needed by an

organization primarily engaged in disseminating information in order to inform the public about actual or alleged federal government activity. 5 U.S.C. § 552(a)(6)(E).

25. Plaintiffs sought a waiver of search, review, and reproduction fees on the ground that disclosure of the requested records is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii).

26. Plaintiffs also sought a waiver of search and review fees on the grounds that the ACLU qualifies as a "representative of the news media" and that the records are not sought for commercial use. *Id.* § 552(a)(4)(A)(ii).

Defendant's Responses to the Request

27. Despite the urgent public interest in the use of executive powers to freeze Afghan funds, the Defendant has not released any records in response to the Request.

28. Under the FOIA, the Defendant has twenty working days to respond to a request. 5 U.S.C. § 552(a)(6)(A)(i). If there are "unusual circumstances," an agency may extend the time limit by no more than ten working days. *Id.* § 552(a)(6)(B)(i). More than thirty working days have passed since Plaintiffs filed the Request. Thus, these statutory time periods have elapsed.

29. By letter dated March 4, 2022, the OLC acknowledged receipt of the request on February 17, 2022, and assigned it tracking number FY22-069.

30. The March 4, 2022 OLC letter denied Plaintiffs' request for expedited processing, deferred its decision on Plaintiffs' request for a fee waiver, and "tentatively" assigned the Request to the "complex" processing track, noting that it "likely would be unable to comply with the twenty-day statutory deadline."

31. To date, the OLC has neither released responsive records nor explained its failure to do so. Plaintiffs have exhausted all administrative remedies because the OLC has failed to comply with the time limit for responding to the Request under the FOIA.

32. The OLC continues to wrongfully withhold the requested records from Plaintiffs.

## CLAIMS FOR RELIEF

33. The failure of Defendant to make a reasonable effort to search for records responsive to the Request violates the FOIA, 5 U.S.C. § 552(a)(3), and Defendant's corresponding regulations.

34. The failure of Defendant to promptly make available the records sought by the Request violates the FOIA, 5 U.S.C. § 552(a)(3)(A), (a)(6)(A), and Defendant's corresponding regulations.

35. The failure of Defendant to process Plaintiffs' request expeditiously and as soon as practicable violates the FOIA, 5 U.S.C. § 552(a)(6)(E), and Defendant's corresponding regulations.

36. The failure of Defendant to grant Plaintiffs' request for a waiver of search, review, and duplication fees violates the FOIA, 5 U.S.C. § 552(a)(4), (a)(6), and Defendant's corresponding regulations.

37. The failure of Defendant to grant Plaintiffs' request for a limitation of fees violates the FOIA, 5 U.S.C. § 552(a)(4), (a)(6), and Defendants' corresponding regulations.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

    A.    Order Defendant to conduct a thorough search for all responsive records;

    B.    Order Defendant to immediately process and release any responsive records;

C.   Enjoin Defendant from charging Plaintiffs search, review, or duplication fees for the processing of the Request;

D.   Award Plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

E.   Grant such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Brett Max Kaufman*
Brett Max Kaufman (D.C. Bar No. NY0224)
Sarah Taitz (admission *pro hac vice* pending)
American Civil Liberties Union Foundation
125 Broad Street—18th Floor
New York, New York 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
bkaufman@aclu.org

*/s/ Arthur B. Spitzer*
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union Foundation
 of the District of Columbia
915 15th Street, NW – 2nd floor
Washington, DC 20005
202-601-4266
aspitzer@acludc.org

Attorneys for Plaintiffs

April 28, 2022